# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ROBERT BINFORD,

    Petitioner,

vs.

JACK PALMER, *et al.*,

    Respondents.

3:08-cv-00360-LRH-VPC

**ORDER**

This action is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by Robert Binford, a prisoner at Nevada's Lovelock Correctional Center. This matter comes before the Court on the merits of the petition.

**I. Procedural History**

The State filed a criminal complaint on March 30, 2005, and an amended criminal complaint on April 13, 2005, charging petitioner with three counts of sexual assault with a minor under fourteen years of age; two counts of lewdness with a child under the age of fourteen, and one count of open or gross lewdness. (Exhibits 4 & 5).[1] The State filed an information in the district court on June 1, 2005. (Exhibit 8). On February 23, 2006, the State filed an amended information and a guilty plea agreement, pursuant to negotiations with petitioner. (Exhibits 11 & 12). Pursuant to the agreement, petitioner agreed to plead guilty to one "category A" felony count of lewdness with a child under the age of fourteen, and both parties jointly agreed to recommend a sentence of life with

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 12 and 14.

parole eligibility after ten years. (Exhibit 12). On April 10, 2006, petitioner was sentenced to life in prison with parole eligibility after ten years, with 54 days credit for time served. (Exhibit 14). The judgment of conviction and guilty plea were filed on April 12, 2006. (Exhibit 15). Petitioner did not appeal the judgment.

On January 31, 2007, petitioner filed a *pro per* motion to correct illegal sentence. (Exhibit 18). On March 14, 2007, the state district court denied the motion. (Exhibit 20).

On March 13, 2007, petitioner filed a *pro per* post-conviction habeas petition in state court. (Exhibit 22). The state district court denied the petition on June 27, 2007. (Exhibit 27). Petitioner filed a notice of appeal from the denial of his state habeas petition. (Exhibit 31). The Nevada Supreme Court affirmed the denial of petitioner's state habeas petition, by order filed June 6, 2008. (Exhibit 33).

On January 28, 2008, petitioner filed another motion to modify judgment and vacate sentence. (Exhibit 35). The state district court filed an order denying the motion on February 20, 2008. (Exhibit 37). Petitioner filed a notice of appeal from the denial of the motion. (Exhibit 38). On October 15, 2008, the Nevada Supreme Court affirmed the district court's denial of the motion. (Order, ECF No. 12, at pp. 39-42, Exhibit G).

On June 27, 2008, this Court received petitioner's *pro se* federal habeas petition. (ECF Nos. 1 & 6). Petitioner's petition consists of a copy of the state post-conviction habeas petition. (ECF No. 6; Exhibits 22 & 23). On November 10, 2008, petitioner filed a document entitled "amended petition." (ECF No. 12). By order filed May 22, 2009, this Court ruled that the "amended petition" (ECF No. 12) is construed as a statement of additional claims, as it only challenges the Nevada Supreme Court's October 15, 2008 order affirming the state district court's denial of petitioner's motion to modify judgment and vacate sentence. (ECF No. 18, at p. 2).

Respondents filed a motion to dismiss on November 13, 2008. (ECF No. 12). By order filed May 22, 2009, this Court denied in part and granted in part, the motion to dismiss. (ECF No. 18). The Court ruled that the petition (ECF No. 6), which incorporated petitioner's state post-conviction habeas petition, was proper. The Court ruled that the grounds in the federal petition (ECF No. 6),

2

and the "amended petition," construed as a statement of additional claims (ECF No. 12), were exhausted in state court. The Court further ruled that Grounds 1-5 and Ground 6(u) were procedurally defaulted in state court and barred from review by this Court. Grounds 1-5 and Ground 6(u) of the federal habeas petition were dismissed with prejudice. Respondents were directed to file an answer to the remaining grounds of the federal petition (ECF No. 6), and the "amended petition," construed as a statement of additional claims (ECF No. 12). (Order, ECF No. 18).

Respondents have filed an answer to the remaining grounds, which include Grounds 6 and 7 of the petition, and the statement of additional claims (supplemental claim). (ECF No. 21). Petitioner has filed a traverse, which is construed as a reply to the answer. (ECF No. 22). Attached to petitioner's traverse is a motion for the appointment of counsel. (ECF No. 22, at pp. 19-22).

**II. Second Motion for Appointment of Counsel**

Attached to the traverse is petitioner's second motion for the appointment of counsel. (ECF No. 22, at pp. 19-22). There is no constitutional right to appointed counsel for a federal habeas corpus proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 428 (9th Cir. 1993). The decision to appoint counsel is generally discretionary. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987); *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984). By order filed September 22, 2008, this Court denied petitioner's first motion for the appointment of counsel. (ECF No. 11). There is nothing in the instant motion for the appointment of counsel that causes this Court to alter its prior denial of counsel. The petition on file in this action is well-written and sufficiently clear in presenting the issues that petitioner wishes to bring. The issues in this case are not complex. Counsel is not justified in this instance. The motion for appointment of counsel is denied.

**III. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Discussion

### A. Ground Six of the Petition

In Ground Six, petitioner claims several instances of ineffective assistance of counsel. (ECF No. 6, at pp. 47-52).

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

5

Most of the challenges to counsel's actions in Ground Six pertain to a failure to investigate the case prior to entry of the plea, or a failure to prepare for sentencing. (*Id.*). The Nevada Supreme Court addressed each subpart of Ground Six in its order of affirmance. (Exhibit 33, at pp. 3-17). As to each claim, the Nevada Supreme Court found that petitioner's claim was conclusory and petitioner failed to demonstrate that his counsel was deficient or that he was prejudiced. (*Id.*). For example, in Ground 6(a), petitioner alleged that counsel failed to seek a competency hearing. Petitioner alleged that he could not assist his attorney if he "didn't understand or recognize the important aspects of the case and or his own actions." (ECF No. 6, at p. 34; Exhibit 22, at p. 14). The Nevada Supreme Court found that petitioner failed to demonstrate that, if his counsel had investigated his competency, the state district court would have found him incompetent or that he would have refused to plead guilty. (Exhibit 33, at p. 3).

As to the remaining subparts of Ground Six, the Nevada Supreme Court found that petitioner failed to specify how counsel erred, or how the result of his conviction would have been different in the absence of the alleged errors. As to each subpart, the Nevada Supreme Court found that petitioner failed to demonstrate that his counsel was deficient or that he was prejudiced as a result of the alleged deficiencies of counsel. (Exhibit 33, at pp. 3-17).

The Nevada Supreme Court also ruled that several subclaims were belied by the record. For example, in Ground 6(s) petitioner alleged that counsel was ineffective for allowing him to be subject to lifetime supervision. The Nevada Supreme Court found that the plea agreement advised petitioner that he was subject to lifetime supervision. (Exhibit 33, at p. 15). Similarly, in Ground 6(g), petitioner claimed that he was told the court would not consider the facts and circumstances of his crime if he pled guilty. The Nevada Supreme Court found that petitioner admitted in his plea agreement that he was not promised leniency in exchange for his plea. (Exhibit 33, at p. 8).

This Court has reviewed each subclaim raised in Ground Six, and has reviewed the Nevada Supreme Court's exhaustive discussion of each subclaim. The Nevada Supreme Court cited to and applied the correct federal standard for ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985). (Exhibit 33, at p. 2 and pp. 3-17).

1  The Nevada Supreme Court denied relief as to each subclaim of Ground Six, finding that petitioner
2  failed to demonstrate that his counsel was deficient and that he failed to demonstrate that he was
3  prejudiced.  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).
4  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or
5  involved an unreasonable application of, clearly established federal law, as determined by the United
6  States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in
7  light of the evidence presented in the state court proceeding.  This Court denies habeas relief as to
8  the entirety of Ground Six.

**B. Ground Seven of the Petition**

In Ground Seven, petitioner claims that he was coerced or misled into pleading guilty by his attorney.  (ECF No. 6, at pp. 52-56).

The application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate a plea has been defined as follows:

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra*, and *McMann v. Richardson, supra*.  The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  The modified *Strickland* prejudice standard in guilty plea cases asks whether there is a probability that, but for counsel's alleged errors, defendant would not have pleaded guilty, but would have insisted on going to trial.  *Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1997).

The Nevada Supreme Court rejected petitioner's claim that counsel induced him into pleading guilty:

> [A]ppellant claimed that his counsel was ineffective for inducing him to plead guilty by advising him that the district court would not

> consider the facts of his crime at sentencing if appellant pleaded guilty. Appellant failed to demonstrate that he was prejudiced. In the plea agreement, appellant acknowledged that he was not pleading guilty as a result of any promise or leniency. At the sentencing hearing, the district court acknowledged that appellant committed a crime and pleaded guilty to that crime, but specifically stated that it was 'not going to go into the facts of the case.' Moreover, appellant received the sentence for which he bargained. Thus, he did not demonstrate that he would have not pleaded guilty and would have insisted upon going to trial on the original information but for counsel's advice. Therefore, the district court did not err in denying this claim.

(Exhibit 33, at p. 8). In the same order, the Nevada Supreme Court again addressed petitioner's claim that counsel induced him into pleading guilty:

> [A]ppellant claimed that his counsel coerced him into plead guilty. Appellant stated that his counsel told him that he jury would convict appellant of all counts if it convicted him of one count and probation was not an available sentencing option. Appellant failed to demonstrate that his plea was involuntary. Appellant stated, in the plea agreement, that he was not pleading guilty as a result of threats or coercion. Therefore, the district court did not err in denying the claim.

(Exhibit 33, at p. 18) (footnote omitted). As to Grounds 7(a-h), the Nevada Supreme Court found that the claims were belied by the record. The written guilty plea and the plea canvass belie petitioner's claims. As to petitioner's claim that he was coerced into signing the plea agreement, that he was not told that the court would determine the sentence, or that he was unaware of the various requirements of the plea agreement, the Nevada Supreme Court found all these claims belied by the record, specifically, by the plea agreement. (Exhibit 33, at pp. 18-19).

As to Ground 7(b), in which petitioner claims that he was not advised that the state district court had ultimate authority to impose his sentence, the Nevada Supreme Court found this claim belied by the record. The Nevada Supreme Court noted that the plea agreement stated "that the district court was the ultimate authority in imposing sentence and was not bound by the plea agreement." (Exhibit 33, at p. 18). The plea agreement indeed states that the sentence is "determined by the court within the limits prescribed by statute." (Exhibit 12, at p. 3).

As to petitioner's claim that the trial court should have explained to him that it was possible that he would receive a sentence of two to twenty years in prison, this subclaim also fails. Under Nevada law, a court accepting a plea must ensure that the defendant "understands the maximum

1  sentence" which may be imposed.  *Rosemond v. State*, 104 Nev. 286, 288, 756 P.2d 1180 (1988); *see
2  also U.S. v. Roberts*, 5 F.3d 365, 368 (9th Cir. 1993) (defendant must understand maximum possible
3  penalty at entry of plea).  The record establishes that petitioner knew the maximum penalty he faced
4  was life in prison.  That is what he and the State stipulated to as the sentence.  Also, petitioner
5  informed the state district court at the entry of the plea that he read and understood the plea
6  agreement, which plainly stated that the sentence would be ten years to life in state prison.  (Exhibit
7  13, at p. 4).  As to Grounds 7(c) and 7(d), petitioner raises as error issues that are collateral in nature,
8  regarding issues that petitioner was not required to be advised of.  (Exhibit 33, at pp. 19-20).

9        This Court has reviewed each subclaim raised in Ground Seven, and has reviewed the
10 Nevada Supreme Court's discussion of each subclaim.  The Nevada Supreme Court cited to and
11 applied the correct federal standards for ineffective assistance of counsel and voluntariness of a plea.
12 The Nevada Supreme Court denied relief as to each subclaim of Ground Seven.  The factual findings
13 of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his
14 burden of proving that the state court's ruling was contrary to, or involved an unreasonable
15 application of, clearly established federal law, as determined by the United States Supreme Court, or
16 that the ruling was based on an unreasonable determination of the facts in light of the evidence
17 presented in the state court proceeding.  This Court denies habeas relief as to the entirety of Ground
18 Seven.

19       **C.  Statement of Additional Claim**

20       Petitioner claims that the application of NRS 201.230, was an *ex post facto* violation because
21 he was sentenced under the 2005 version of the law.  (ECF No. 12).

22       The *Ex Post Facto* Clause "is aimed at laws that 'retroactively alter the definition of crimes
23 or increase the punishment for criminal acts."  *Miller v. Ignacio*, 112 Nev. 930, 933, 921 P.2d 882,
24 883 (1996), citing *Collins v. Youngblood*, 497 U.S. 37, 43 (1990) (citation omitted).  The United
25 States Supreme Court has established a two-part test to address *ex post facto* claims.  A law violates
26 the Ex Post Facto Clause if it is (1) retroactive – it applies "to events occurring before its
27 enactment," and (2) detrimental – it "produces a sufficient risk of increasing the measure of

punishment attached to the covered crimes." *Weaver v. Graham*, 450 U.S. 24, 29 (1981); *Cal. Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (1995); *Himes v. v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003). "The inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual. *Weaver,* 450 U.S. at 33; *Nulph v. Faatz*, 27 F.3d 451, 455-56 (9th Cir. 1994).

Changes in the law that are merely procedural will withstand scrutiny, as will statutes that leave unaffected the "crime for which . . . defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt." *Dobbert v. Florida*, 432 U.S. 282, 294 (1977). A law does not violate the clause if it "creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." *Morales*, 514 U.S. at 513.

Petitioner raised this claim, and the Nevada Supreme Court rejected it, in the order filed October 15, 2008. (Order, ECF No. 12, at pp. 39-42, Exhibit G). The Nevada Supreme Court noted that the information under which petitioner entered his plea stated that the crime occurred "between January 1, 2002 and December 31, 2004." (ECF No. 12, p. 41, n. 7). The Nevada Supreme Court also noted that petitioner received the sentence to which he had stipulated, which included the dismissal of several more serious charges. (ECF No. 12, p. 41).

Nevada's statute against lewdness with a child under the age of 14, NRS 201.230, was amended in 1999, 2003, and 2005. In 1999, the law provided that the only available sentence was life in prison. In 2003, this was amended, such that a sentence of ten years to life was available, or, a sentence of 20 years with parole eligibility after two years had been served. In 2005, the "two to twenty" provision was eliminated, returning the sole available sentence to that of ten years to life in prison. NRS 201.30, 1999, 2003, and 2005 Amendments; Exhibit 41. As such, the only time that a sentence of years was available was the period of time between 2003 and 2005.

Assuming *arguendo*, that petitioner's claim of being sentenced under the 2005 version of the statute is correct, the 2005 version of the statute is essentially the same as the 1999 version. As a practical matter, petitioner was not subjected to retroactive application of the 2005 statute. While

petitioner may have been subjected to provisions similar to the 1999 statute, that was permissible given the date range of the crimes to which he pled. Additionally, the Nevada Supreme Court determined that petitioner failed to show that he would have insisted on going to trial on the original charges "had he known of a lesser available sentence." (Exhibit 33, at p. 11). Petitioner's sentence was the product of a knowing and voluntary plea agreement which dismissed many other more serious charges.

Petitioner has not demonstrated that the 2005 version of NRS 201.230 was applied retroactively to him and that it was detrimental such that it "produce[d] a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Weaver v. Graham*, 450 U.S. 24, 29 (1981); *Cal. Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (1995). Petitioner has also failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court denies habeas relief as to petitioner's *ex post facto* claim and as to the entirety of petitioner's additional statement of claim (ECF No. 12).

**V. Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a

certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**VI. Conclusion**

   **IT IS THEREFORE ORDERED** that petitioner's second motion for the appointment of counsel (ECF No. 22, at pp. 19-22) is **DENIED.**

   **IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus (ECF No. 6) and petitioner's additional statement of claim (ECF No. 12) are **DENIED**.

   **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

   **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

   Dated this 13th day of June, 2011.

   _____
   LARRY R. HICKS
   UNITED STATES DISTRICT JUDGE